Charles L. PATILLO and Wanda J. Patillo, Appellants,

v.

CITY OF SAN ANTONIO, acting by and through the SAN ANTONIO WATER SYSTEM, Appellee.

No. 04–04–00322–CV.

Court of Appeals of Texas, San Antonio.

Feb. 2, 2005.

Jerry N. Dennard, San Antonio, for appellants.

Paul D. Barkhurst, Joe R. Hinojosa, Oppenheimer Blend Harrison & Tate, Inc., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Charles L. Patillo and Wanda J. Patillo appeal the trial court's order granting summary judgment in favor of the City of San Antonio acting by and through the San Antonio Water System ("SAWS"). The trial court's order confirms the award of the special commissioners in a condemnation action. The Patillos contend that the trial court erred in granting summary judgment because, as a matter of law, the access to the Patillos' remainder property was substantially and materially impaired. We affirm the trial court's judgment.

## BACKGROUND

The Patillos own three contiguous tracts of land totaling 449.977 acres. The only ingress and egress to the land is a road extending from FM1303. The parties agree that the highest and best use of the property is residential.

As part of SAWS' Aquifer Storage and Recovery ("ASR") Project,[1] SAWS sought to condemn 6.724 acres of the Patillos' property for an easement to build an underground pipeline. The pipeline would include one above-ground pressure valve at the edge of the Patillos' land.

In July of 2002, a special commissioners' hearing was held, and the commissioners entered an award of $9,600.00 for the easement and $14,400.00 for damages to the remainder property, for a total award of $24,000.00. The Patillos objected to the award, and SAWS filed a notice of deposit of the award into the court's registry. In December of 2002, SAWS filed its first amended original petition in condemnation. The Patillos' special exceptions to the petition were granted, and SAWS filed a second amended original petition. The Patillos filed special exceptions to the second amended petition, and the parties filed cross motions for summary judgment addressing the issue of whether the easement created a material and substantial impairment of access to the remainder of the Patillos' property. The trial court granted SAWS summary judgment motion, denied the Patillos' motion, and confirmed the award of the special commissioners.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex.2002). In reviewing a traditional motion for summary judgment, the reviewing court must resolve every doubt and indulge every reasonable inference in the nonmovant's favor. *Id.* All evidence favorable to the nonmovant will be taken as true. *Id.* When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, deter-

1. The ASR project is part of San Antonio's 50-year water plan, and the pipeline to be built by SAWS as part of the project would connect downtown San Antonio with an underground drinking and storage facility in South Bexar County.

mine all questions presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## DISCUSSION

### A. Special Exceptions

The Patillos initially contend that the trial court erred in denying their special exceptions to SAWS' second amended original petition. The Patillos assert that SAWS should have been required to set out with specificity the proprietary rights reserved unto the Patillos. Absent such specificity, the Patillos contend that the trial court should have dismissed the second amended original petition or found that access to the remainder was substantially and materially impaired.

 We review a trial court's ruling on special exceptions under an abuse of discretion standard. *Hefley v. Sentry Ins. Co.,* 131 S.W.3d 63, 65 (Tex.App.-San Antonio 2003, pet. denied). The purpose of special exceptions is to force clarification and specification in the pleadings, when they are not clear or sufficiently specific. *Id.*

The Patillos assert that the special exceptions should have been granted because the description of the rights reserved to them as a result of the "limited" easement were not sufficiently specific. The Patillos contend that the description contains mere promissory statements or declarations of future intentions rather than setting out the particular rights that were reserved to them. *See Coastal Indus. Water Authority v. Celanese Corp. of America,* 592 S.W.2d 597, 601–02 (Tex.1979) (distinguishing between promissory statements which are prohibited and a description of reserved rights under a limited easement); *White v. Natural Gas Pipeline Co. of*

*America,* 444 S.W.2d 298, 300–01 (Tex. 1969) (same).

The petition states:

9. As further delineated in Section V, Paragraphs E(14), (15), and (16) below, Defendants and Defendants' heirs, successors, and assigns (hereinafter "Defendants") shall have the right to use all or any part of the permanent easement sought to be acquired herein for any purpose that does not interfere with Plaintiff's rights to construct, reconstruct, realign, inspect, patrol, maintain, operate, repair, add, remove and replace underground pipelines for the transportation and distribution of water, together with all necessary or desirable above and below ground appurtenances thereto within the permanent easement. "Interfere", as used herein, shall mean any act of Defendants which physically prevents Plaintiff from constructing, reconstructing, realigning, inspecting, patrolling, maintaining, operating, repairing, adding, removing and replacing underground pipelines for the transportation and distribution of water, together with all necessary or desirable above and below ground appurtenances thereto. The rights set out in Section V, Paragraphs E(14), (15), and (16) below expressly do not interfere with Plaintiff's right to construct, reconstruct, realign, inspect, patrol, maintain, operate, repair, add, remove and replace underground pipelines for the transportation and distribution of water, together with all necessary or desirable above and below ground appurtenances thereto within the permanent easement.

Section V, Paragraphs E(14), (15), and (16) provide:

E. Defendants' Specific Rights Within the Permanent Easement

14. Defendants' Right of Access. Defendants will have the perpetual right to

access their property on either side of the permanent easement, and such access shall not be denied by Plaintiff. 15. Defendants' Right to Develop their Property. Defendants may build roads, drive-ways, fences, gates, signs, parking areas, and landscaped areas within the permanent easement. Defendants may also construct and/or install water pipe-lines, sewer pipelines, gas pipelines, electric power-lines, cable television lines, telephone lines, and other utility lines across the permanent easement. 16. Defendants may not construct or place a building or other structure, or excavation, on, over or within the permanent easement. "Structure", as used herein, is to be interpreted in its narrowest sense, and shall include such things as buildings, houses, edifices, and concrete slabs. "Excavation", as used herein, includes such things as ponds, lakes, reservoirs, and swimming pools. The following items are specifically excluded from the definitions of the terms "structure" and "excavation" as used herein: roads, drive-ways, fences, gates, signs, parking areas, side-walks, landscaped areas; water pipelines, sewer pipelines, gas pipelines, electric power-lines, cable television lines, telephone lines, and other utility lines. Defendants may not change the grade or alter the ground elevation of the land within the permanent easement. Defendants may not damage, destroy, and/or injure Plaintiff's water facilities within the permanent easement.

We hold that the trial court did not abuse its discretion in denying the Patillos' special exceptions to SAWS' second amended original petition. The foregoing language used in the petition sufficiently described the proprietary rights reserved to the Patillos as a result of the "limited"

easement, and the language does not contain mere promissory statements or declarations of future intentions. The language vests immediate rights in the Patillos with the only limitation being that the Patillos may not harm SAWS' pipeline. Although the Patillos contend that the language does not expressly reserve in them the right to grant easements, thereby precluding development, the granting of the right to construct and/or install water pipelines, sewer pipelines, gas pipelines, electric power-lines, cable television lines, telephone lines, and other utility lines across the permanent easement necessarily includes the right to grant such easements.

**B. Material and Substantial Impairment of Access to the Remainder**

■ The Texas Constitution requires governmental entities to compensate landowners adequately when property is taken for public use. *County of Bexar v. Santikos*, 144 S.W.3d 455, 459 (Tex.2004). If a governmental entity condemns only part of a tract, adequate compensation is required for both the part taken and any resulting damage to the remainder. *Id.* Not all damages to remainder property are compensable. *Id.* Whether damages can be recovered depends on what kind of damage is involved. *Id.* Compensability is a question of law for the court, and subject to de novo review. *Id.*

■ In this case, the Patillos sought damages for impaired access to the remainder property. Impaired access to remainder property is a compensable special injury only if a material and substantial impairment of access exists as a matter of law. *Id.* at 460. Whether access rights have been materially and substantially impaired is a question of law.[2] *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996).

**2.** For purposes of this opinion, we have assumed, without deciding, that an under-

The Patillos' contention that the remainder property was materially and substantially impaired hinges on their premise that the proprietary rights reserved to them "do not include the right to dedicate or grant easements for the extension of utilities" preventing them from subdividing the property for residential purposes. The Patillos rely on their expert's testimony that as a result of the taking, the remainder property was "landlocked." SAWS responds that the Patillos' expert stated that he only had assumed that the remainder property was landlocked at the direction of the Patillos' legal counsel. SAWS further responds that the proprietary rights reserved to the Patillos give them the ability to grant whatever easements are necessary under either the Bexar County Specifications for Subdivisions and Public Works Construction (the "County Specs"), which SAWS contends is not applicable, or the San Antonio Unified Development Code ("UDC").

Kirby Gholson was the expert for the Patillos. In testifying regarding the damage to the remainder property, he testified, "The balance of the remainder after, 429.253 acres, again with the assumption that it's not developable, not usable, has no access through any other property at this point in time ag value would be $53 an acre." The Patillos' attorney asked Gholson to respond to the following hypothetical:

Q. Let me ask you the same hypothetical I asked Mr. Groll. Let's assume that I am correct in my interpretation of the law in that the language in the charging document filed in the county court here [i.e., the second amended original petition] is such that it pre-

cludes doing those things described in one of those exhibits I gave; that is water lines, sewer lines, cable lines, electrical lines, and so on. Let's suppose we're precluded from doing that and, therefore, the highest and best use of that property is not residential anymore. Do you have an opinion as to the value that would remain in the remainder?

A. Basically that's how the report was prepared. And that is that it would be a single residential site, not subdivision property, not any kind of producing as it is before the easement. It has the potential to produce tremendous income with development but not after the easement.

With regard to his underlying assumption, Gholson responded as follows during cross-examination:

Q. Okay. Now, I believe you just said that you based your report on one very big assumption—the premise you called it—with the premise that the easement precludes any development behind it. That's your premise?

A. That was my assignment.

Q. Okay. So did you come up with that premise, or who came up with that premise?

A. Mr. Dennard [counsel for the Patillos].

Q. Okay.

A. That was the assignment.

Q. Okay. Well, if you were just sent out to appraise this property without his legal interpretation, would you have come up with a different value?

MR. DENNARD: Objection. I object to the characterization of that as my legal interpretation. That is the law.

ground pipeline can result in impaired access to the remainder property. *See State v. Heal,* 917 S.W.2d 6, 11 (Tex.1996) (noting impaired access cases generally involve physical ob-

structions created by a public improvement but not precluding the possibility that traffic could materially and substantially impair access).

MR. BARKHURST: And—And I'd ask the question just the same way. We're going to argue about that interpretation.

MR. WISE[3]: The objection is going to be overruled.

MR. BARKHURST: Okay. Thank you.

Q. (By Mr. Barkhurst) If you had gone out there just on your own without Mr. Dennard's legal interpretation of the law, would you have come up with a value similar to Mr. Groll's [SAWS' expert]?

A. It would depend on what I read in the easement and what the interpretation was. And I'm not an attorney. And I hire a lot of attorneys to keep me out of stuff just like this. I'm not going to buy that piece of property for a subdivision. It's ideal for a 60–foot road down the middle and lots on both sides. But I'm not going to buy it with that easement right across the front of it not knowing what that easement says.

Q. Okay.

A. And I have to say that when you buy and sell enough property you appraise property every time you do that.

Q. And I appreciate that. You have a lot of experience in real estate development. And I appreciate that. In fact, let me ask you the hypothetical questions that Mr. Dennard asked Mr. Groll. Let's assume that the petition is correct and your clients can, in fact, cross this easement with roads and with utilities. Let's assume that hypothetically as an expert. Would that change your opinion in this case?

A. Yes. It would be usable afterwards.

Q. Okay. And, therefore, would your value be more in alignment with Mr. Groll's?

A. It would be.

At the hearing before the special commissioners, SAWS introduced the testimony of Michael Brinkman, a civil engineer and the project manager for the ASR project. Brinkman testified that the easement would not sever or cut off the back portion of the property. Wayne Groll, SAWS' appraisal expert, similarly testified that the easement would not preclude the future use of the land for a subdivision. SAWS further introduced as summary judgment evidence the affidavit of Eddie Guzman, the manager for the City of San Antonio Development Services Department, who stated he was familiar with the County Specs and the UDC. Guzman stated that he had reviewed the second amended original petition and that "[t]here is no impediment in the petition, the permanent easement, the UDC or the County Specs to platting and subdividing the Patillo Property."

After reviewing the petition, we conclude as a matter of law that the permanent easement does not result in a material and substantial impairment of access to the remainder property. Accordingly, the trial court properly concluded that the Patillos were not entitled to damages for impaired access to the remainder property.

### CONCLUSION

The trial court's judgment is affirmed.

---

3. Mr. David Wise was one of the three special commissioners who presided at the commission level.